# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Submitted April 3, 2018        Decided June 29, 2018

No. 17-5136

ANICA ASHBOURNE,
APPELLANT

v.

DONNA HANSBERRY, DIRECTOR, GLOBAL HIGH WEALTH, ET
AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-00908)

———

*Anica Ashbourne*, *pro se*, was on the briefs for appellant.

*Jessie K. Liu*, U.S. Attorney, and *R. Craig Lawrence* and *Benton Peterson*, Assistant U.S. Attorneys, were on the brief for appellees.

Before: TATEL, SRINIVASAN and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: This appeal turns on the answer to a single question: Are Anica Ashbourne's employment discrimination claims under Title VII, 42 U.S.C. § 2000e *et*

*seq.*, subject to ordinary principles of *res judicata*, even though at the time she filed her earlier suit she had not yet received a notice of her right to sue for those claims? We now join every circuit court to have addressed that question, as well as a number of our own prior unpublished dispositions, and hold that *res judicata* applies to such Title VII claims, at least in the absence of a particularized showing that prosecuting or otherwise preserving the claims in the initial litigation was infeasible. Because including Ashbourne's Title VII claims in her initial litigation was entirely feasible, the judgment of the district court is affirmed.

# I

In June 2010, the Department of the Treasury's Internal Revenue Service hired Anica Ashbourne, a tax attorney and certified public accountant, into its Global High Wealth division, subject to a one-year probationary period. Shortly before her probationary year expired, the IRS terminated Ashbourne for having provided false or misleading information about her employment history in the job application process. The termination became final on May 28, 2011.

## *Ashbourne I*

Ashbourne brought challenges related to her termination on two separate fronts: She raised Title VII claims asserting race and gender discrimination in a Treasury Department administrative proceeding, and she pressed a number of other challenges tied to her termination in federal court.

On the federal-court front, Ashbourne filed three separate lawsuits in the United States District Court for the District of Maryland between September 30 and November 30, 2011. Ashbourne's first complaint alleged that the Treasury

Department and her former supervisors violated her constitutional right to due process by jeopardizing her chances for future employment without an evidentiary hearing. *Ashbourne v. Geithner*, 8:11-cv-02818-RWT (D. Md. Sept. 30, 2011). Her two subsequent complaints collectively alleged violations of her statutory rights under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, the Equal Pay Act, 29 U.S.C. § 206(d)(1), and the Privacy Act, 5 U.S.C. § 552A. *See Ashbourne v. Geithner*, 8:11-cv-03199-RWT (D. Md. Nov. 9, 2011); *Ashbourne v. Department of the Treasury*, 8:11-cv-03456-RWT (D. Md. Nov. 30, 2011).

The district court in Maryland consolidated all three complaints into a single action. *Ashbourne v. Geithner*, 2012 WL 2874012, at *1 (D. Md. July 12, 2012). At no point did Ashbourne raise any claims under Title VII in her consolidated cases. *See id*.

On the administrative front, Ashbourne filed a complaint in November 2011 with the Treasury Department's equal employment opportunity office, in which she alleged that her termination and related events violated Title VII. Treasury denied her administrative claim in December 2012, and informed Ashbourne that she could either appeal that decision to the Equal Employment Opportunity Commission ("EEOC") or file a civil suit in district court. *Ashbourne v. Hansberry*, 1:16-cv-908-CKK, ECF No. 6-2 (D.D.C. Aug. 18, 2016) ("*Ashbourne II*"). Treasury also informed her that, if she chose EEOC review, she could still file a civil action if the EEOC did not issue a final decision within 180 days. *Id*.

On January 26, 2013, Ashbourne chose to appeal to the EEOC rather than to join her Title VII claims with her pending litigation.

Meanwhile back in the courtroom, the district court transferred Ashbourne's three consolidated complaints to the United States District Court for the District of Columbia. *Ashbourne*, 2012 WL 2874012, at \*5; *see also Ashbourne v. Geithner*, 1:12-cv-1154-BAH, ECF No. 10 (D.D.C. July 12, 2012) ("*Ashbourne I*"). Ashbourne moved the D.C. district court to transfer the case back to Maryland, but the court declined. *Ashbourne I*, 1:12-cv-1153-BAH, Minute Order (D.D.C. Dec. 5, 2012).

Ashbourne appealed the denial of retransfer, and moved this court to hold the appeal in abeyance until the EEOC acted on her pending Title VII claims. *Ashbourne v. Wolin*, No. 13-5006, Motion to Stay Proceedings at 3, ECF No. 1420479 (D.C. Cir. Feb. 13, 2013). Treating Ashbourne's interlocutory appeal as a petition for a writ of mandamus, *see In re Briscoe*, 976 F.2d 1425, 1426 (D.C. Cir. 1992) (per curiam), this court denied both the challenge to the transfer and the motion for abeyance. *See Ashbourne v. Wolin*, No. 13-5006, ECF No. 1442038 (D.C. Cir. June 19, 2013).

When the case returned to district court, Ashbourne was ordered to file "a single, consolidated complaint" that would "contain[] all claims remaining in this consolidated case." *Ashbourne I*, 1:12-cv-1153-BAH, ECF No. 44 at 2 (D.D.C. Aug. 9, 2013). She complied on October 29, 2013. Ashbourne's consolidated complaint asserted only her claim under the Due Process Clause and four causes of action under the Privacy Act. *Id.*, ECF No. 49 (D.D.C. Oct. 29, 2013). Title VII was nowhere mentioned in the consolidated complaint, even though Ashbourne had been advised that she could have brought suit on her Title VII claims due to the EEOC's delay in ruling, 42 U.S.C. § 2000e-16(c). *See Ashbourne II*, 1:16-cv-908-CKK, ECF No. 6-2. Neither did she ask the district court for a stay of proceedings pending the

EEOC's decision or otherwise notify the court of the pending administrative Title VII claims.

In September 2015, the EEOC dismissed Ashbourne's appeal of her Title VII claims on the ground that its regulations prohibit the simultaneous pursuit of administrative and judicial remedies. *See* 29 C.F.R. § 1614.409. Ashbourne did not notify the district court of that dismissal or seek to add the Title VII claims to her pending case.

Around that same time, the district court dismissed Ashbourne's alleged Due Process Clause violation, which she had filed under 42 U.S.C. § 1983, for failure to state a plausible legal claim for relief. *Ashbourne I*, 2014 WL 12666716, at *1 (D.D.C. Sept. 3, 2014). The court also dismissed without prejudice the claims against the defendants in their personal capacities for improper service of process. *Id*.

Two months later, the district court *sua sponte* dismissed Ashbourne's Privacy Act claims against the individual defendants because the Act provides a cause of action only against federal agencies. *Ashbourne I*, 2015 WL 11303198, at *11 (D.D.C. Nov. 24, 2015). And the court granted summary judgment for the agency on the ground that Ashbourne failed to adduce evidence of a single instance in which the agency either improperly disclosed her records or relied on inaccurate records in reaching its termination decision. *Id*. at *8–10.

Closing the loop on *Ashbourne I*, this court affirmed the district court's final judgment on the ground that Ashbourne's claims "impermissibly recast a federal personnel management decision as a factual challenge under" the Privacy Act, and that she had received adequate process to protect her professional reputation. *Ashbourne v. Hansberry*, 703 F. App'x 3, 4 (D.C. Cir. 2017) (mem.).

***Ashbourne II***

In May 2016, roughly eight months after the EEOC dismissed her administrative appeal and about six months after the district court entered judgment for the government in *Ashbourne I*, Ashbourne filed a second complaint in the District of Columbia district court. *Ashbourne II*, 1:16-cv-908-CKK, ECF No. 1 (D.D.C. May 18, 2016). This time, Ashbourne alleged that her firing violated Title VII. The Title VII complaint was against the same defendants and involved the same factual allegations of adverse employment actions involving unequal pay, a hostile work environment, and termination as *Ashbourne I*. *Id.* ¶¶ 325.

The district court dismissed the complaint on the ground that the Title VII claims were barred by *res judicata*. *Ashbourne II*, 245 F. Supp. 3d 99, 101 (D.D.C. 2017). The district court concluded that the Title VII complaint arose out of the same nucleus of operative facts surrounding her termination and involved the same parties as *Ashbourne I*. *Id.* at 104–105; *compare Ashbourne II*, 1:16-cv-908-CKK, ECF No. 1, Compl. ¶¶ 8–25 (describing circumstances of Plaintiff's termination from the Treasury Department), *with Ashbourne I*, 1:12-cv-1153-BAH, ECF No. 49, Amended Compl. ¶¶ 20–40 (same). Because Ashbourne's challenges to the same actions of the same defendants had already been fully adjudicated on the merits by the district court in *Ashbourne I*, and because Ashbourne neither joined her Title VII claims when able nor sought a stay pending exhaustion from the district court, the court ruled that traditional claim-preclusion principles barred further prosecution of the case. *Ashbourne II*, 245 F. Supp. 3d at 104–106.

## II

Ashbourne's attempt to relitigate employment claims resolved against her in favor of the same defendants in her first lawsuit fits *res judicata* doctrine to a T. The only colorable argument that Ashbourne asserts to fend off *res judicata* is that she had not been given a timely right-to-sue letter in her administrative proceedings. But when, as here, the absence of that letter was no barrier to joining the claims to her pending federal court action, Ashbourne's voluntary choice to stick with the administrative forum is just as much subject to *res judicata* consequences as any other strategic choice to withhold a claim from litigation.

We review *de novo* the district court's application of *res judicata*. *Ibrahim v. District of Columbia*, 463 F.3d 3, 7 (D.C. Cir. 2006).

*Res judicata* is an ancient legal doctrine that, in simple terms, limits parties to one bite at the litigation apple. Generally speaking, it bars successive lawsuits if a prior litigation (1) involving the same claims or causes of action, (2) between the same parties or their privies, (3) ended in a final, valid judgment on the merits, (4) entered by a court of competent jurisdiction. *Smalls v. United States,* 471 F.3d 186, 192 (D.C. Cir. 2006). Whether successive cases involve the same cause of action "turns on whether the[] [causes of action] share the same nucleus of facts." *Drake v. FAA,* 291 F.3d 59, 66 (D.C. Cir. 2002) (internal quotation marks omitted). Said another way, the test is whether the latter case involves issues that "were or could have been raised" in the earlier case. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Summary judgment and dismissal for failure to state a claim both constitute final judgments on the merits. *See Prakash v. American Univ.*, 727

F.2d 1174, 1182 (D.C. Cir. 1984); *see also Bell v. Hood*, 327 U.S. 678, 682 (1946).

Ashbourne's second lawsuit checks every one of those boxes. The district court's jurisdiction in the original case is unquestioned. Ashbourne's Title VII claims and the claims already fully adjudicated on the merits in *Ashbourne I* share a common genesis: the termination of her federal employment and alleged adverse employment actions tied up with that termination. And the Title VII lawsuit targets the same defendants that had already been forced to defend the same conduct against factually related claims, on which they obtained a judgment on the merits in their favor. *See Ashbourne II*, 245 F. Supp. 3d at 104–106.

The only question is whether the administrative exhaustion requirements for Title VII claims change the *res judicata* calculus. We hold that administrative exhaustion does not do so if the plaintiff had a full and fair opportunity to bring the Title VII claims in the initial action. Ashbourne had two distinct opportunities to join her Title VII claims to her pending litigation and multiple chances to seek a stay in district court, but availed herself of none of them.

First, she could have added the Title VII claims to her litigation after Treasury's equal employment opportunity office denied her claim in December 2012. *See* 42 U.S.C. § 2000e–16(c) (indicating that, after timely filing a formal administrative complaint, a federal employee may file a civil action in federal court within ninety days of receiving the agency's notice of a final administrative decision). At that point, her consolidated cases were at a very early procedural juncture—it was nearly nine months before the district court ordered Ashbourne to file a final, consolidated complaint containing all claims—so the addition of new claims was

presumptively permissible. *See* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend the complaint] when justice so requires.").

Second, she could have added her Title VII claims to the final consolidated complaint filed in district court after the transfer, when the district court specifically invited her to include all claims she wished to litigate against the defendants in a single proceeding. *Ashbourne I*, 1:12-cv-1153-BAH, ECF No. 44 (D.D.C. Aug. 9, 2013) ("[I]n the interest of judicial efficiency * * * [Ashbourne] is directed to file by September 11, 2013, a single, consolidated complaint *containing all claims remaining in this consolidated case*" "so as to allow the defendants to address all remaining claims in this action in a single motion[.]") (emphasis added). Exhaustion was no bar at that point because the EEOC had failed to issue a decision within 180 days, which freed her to proceed to district court without awaiting further EEOC action or notice of her right to sue. *See* 42 U.S.C. § 2000e-16(c).

Ashbourne, of course, had the right to prefer the continued pursuit of administrative review to federal court litigation. But that choice, like any other strategic choice a party might make to refrain from litigating a particular claim, has *res judicata* consequences.

In so holding, we find ourselves in good company. Every other circuit to address the question has held that *res judicata* principles apply to claims that could have been included in the earlier litigation. *See*, *e.g.*, *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 39 (2d Cir. 1992) ("[T]he language and policy of Title VII do not undercut the application of res judicata, and we see no reason militating against application of well-settled claim preclusion principles."); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 314 (5th Cir. 2004) ("While factual allegations

articulated in the [later Title VII lawsuit] differ, all of the claims in question originate from the same continuing course of allegedly discriminatory conduct[.]"); *Herrmann v. Cencom Cable Assocs.,* 999 F.2d 223, 225 (7th Cir. 1993) (concluding that where "one transaction [i]s alleged to violate a host of different laws, [] it would not make much sense to say that the plaintiff must file all but the Title VII claim in one suit but may wait and bring a second suit charging violations of Title VII alone").   Prior unpublished decisions from this court are of the same mind.  *See Coleman v. Potomac Elec. Power Co.*, No. 04-7043 (D.C. Cir. Oct. 19, 2004) (unpub. mem.) (affirming that *res judicata* barred a Title VII retaliation claim where all alleged factual predicates for the retaliation claim were adjudicated in previous suit); *Yelder v. Gates*, No. 10-5285 (D.C. Cir. Dec. 28, 2010) (unpub. mem.) (same).

Alternatively, Ashbourne could have sought a stay of the initial litigation from the district court pending the conclusion of administrative proceedings.   That would have put everyone on notice that she was seeking to vindicate Title VII claims alongside the other constitutional and statutory claims already being litigated, and would have allowed the district court to take the procedural steps necessary to efficiently manage the litigation.   But Ashbourne did not pursue a stay of the district court proceedings either.  *See, e.g.*, *Battle v. Peters*, No. 06-5424 (D.C. Cir. Aug. 9, 2007) (unpub. mem.) (explaining that obtaining a stay of the first action until receipt of the right-to-sue letter for the Title VII claims could prevent *res judicata* from attaching); *Woods*, 972 F.2d at 39 ("We are of the firm opinion that a district court faced with a stay request in this type of situation—where a Title VII plaintiff is seeking to defer further proceedings in non-Title VII causes of action while pursuing Title VII administrative remedies—should grant the stay absent a compelling reason to the contrary."); *Davis*, 383 F.3d at 315 (agreeing with *Woods* that staying the first-filed

action would have prevented a *res judicata* bar to subsequent Title VII claims); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714–715 (9th Cir. 2001) (unless a plaintiff seeks a stay from the district court to pursue administrative remedies or attempts to amend the complaint to include Title VII claims, those claims are subject to *res judicata*); *Wilkes v. Wyoming Dep't of Employment*, 314 F.3d 501, 506 (10th Cir. 2002) (holding that Title VII claim was barred where plaintiff neither sought a stay, nor attempted to amend after later receiving a right-to-sue letter); *cf. Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (noting "district courts' discretion to defer * * * proceedings pending the prompt conclusion" of other proceedings bearing upon the federal litigation).

Nor did Ashbourne seek expedited issuance of a right-to-sue letter from the EEOC so that she could timely join the Title VII claims to the pending litigation. *See Herrmann*, 999 F.2d at 225; *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032–1033 (6th Cir. 1998) (plaintiff who could have received a right-to-sue letter and could have perfected claims during the pendency of the first-filed action was barred by *res judicata* from bringing subsequent Title VII suit); *Heyliger v. State Univ. & Community College Sys.*, 126 F.3d 849, 854–856 (6th Cir. 1997) (requiring a plaintiff to seek a right-to-sue letter and to amend his complaint to add the federal claim would not impose a burden on him beyond ordinary due-diligence requirements); *see also Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000) (finding that *res judicata* precluded Americans with Disabilities Act claim where plaintiff failed to obtain right-to-sue letter during pendency of previous litigation); *Churchill v. Star Enters.*, 183 F.3d 184, 193–194 (3d Cir. 1999) (same).

Here, Ashbourne, a licensed attorney, failed at every turn to avail herself of the procedural safeguards available for

prosecuting or preserving her Title VII claims. She has identified no reason why, with ordinary diligence, she could not have litigated or otherwise preserved her Title VII claims in the initial litigation. Neither the administrative agencies nor the district court impeded the inclusion of her Title VII claims in *Ashbourne I*. Nor was a reasonable request for a stay of litigation denied by the district court.

Ashbourne's passing suggestion that her Title VII claims arose out of a different nucleus of relevant facts from those at issue in *Ashbourne I* is without merit. *See* Ashbourne Br. 20. As the district court found, the operative complaints in Ashbourne's first and second federal actions are both predicated on her termination and interrelated adverse employment actions. *See Ashbourne II*, 245 F. Supp. 3d at 104. So both cases arise from the same factual circumstances. Even Ashbourne concedes, as she must, that "her termination is a common fact in all of her lawsuits." Ashbourne Br. 20. There is, in short, no factual basis for extracting Ashbourne's Title VII claims from the same nucleus of operative facts that underlay her first action. Accordingly, well-established principles of *res judicata* foreclose her Title VII claims.

Ashbourne also argues that her motion in this court to hold the retransfer appeal in abeyance should have sufficed to preserve her Title VII claims. Ashbourne Br. 17–18; Reply Br. 10–11. Ashbourne is correct that she styled that request as a "Motion to Stay Proceedings and Memorandum in Support." No. 13-5006, Doc. No. 1420479 (Feb. 13, 2013). But that is not enough.

For starters, that document never references Title VII, administrative exhaustion, or *res judicata*. She nowhere explains that the *appellate* stay she is seeking is needed to also halt the *district court* litigation in order to preserve a Title VII

claim that she could not otherwise bring. More to the point, no stay motion was filed in district court, as the rules require when a stay of district court proceedings is sought. FED. R. APP. P. 8; *see* D.C. CIR. RULE 8. Instead, Ashbourne filed her motion in this court seeking only to stay this court's action on her interlocutory appeal challenging the transfer decision. Ashbourne never sought a stay of the district court litigation pending exhaustion of her administrative remedies. Ashbourne's belated effort to repurpose her filing in this court thus is no answer to settled *res judicata* law.

## III

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*